# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SHERYL L. BURKS, o/b/o** ) | |
| **ANDREW M. BURKS, a minor,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 04-2017-CM** |
| ) | |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Andrew M. Burks filed this action on January 15, 2004, alleging that defendant, the Commissioner of Social Security erred as a matter of law in denying plaintiff's application for child's insurance benefits as a survivor under Title II of the Social Security Act (SSA), 42 U.S.C. §§ 401 *et seq*. This matter comes before the court on plaintiff's Social Security Brief (Doc. 5), which seeks reversal of the Commissioner's final decision and claims that the Commissioner's decision was not based on substantial evidence.

**I.     Facts**

Plaintiff was born on July 2, 1989. On March 18, 1999, Victor C. Burks, Jr., the wage-earner, and plaintiff's biological grandfather (Mr. Burks), died. On August 11, 2000, Sheryl L. Burks, Victor Burks' surviving spouse and plaintiff's biological grandmother (Ms. Burks), protectively filed an application on behalf of plaintiff for child's insurance benefits, survivor, under §§ 202(d) and 216(e) of the SSA, on Mr. Burks' account. On November 8, 2000, Ms. Burks adopted plaintiff.

Plaintiff, his mother, Kimberly Olivas, and his father, Esteban Olivas, lived in Kansas with Mr. and Ms. Burks and their other children, Victor C. Burks III and Melinda Burton. Later, Mr. and Ms. Burks, their children, and plaintiff moved to South Carolina. Plaintiff continued living with his grandparents even after his mother moved from the household to live with Larry Stanley, her common-law husband.

When plaintiff started kindergarten at age five, he moved to his mother's home about 40 miles away. Plaintiff continued to stay with his grandparents on the weekends. Every Friday afternoon, Mr. Burks picked plaintiff up at school and returned plaintiff to his mother's house on Sunday evening. Plaintiff continued this arrangement with his grandparents until Mr. Burks' death on March 18, 1999, at which time plaintiff was nine years old. Plaintiff also lived with his grandparents during all school vacations and in the summer. Plaintiff took trips with his grandparents during the summer and on spring break, paid for by his grandfather. In June 1999, plaintiff and Ms. Burks moved back to Kansas, and Ms. Burks adopted plaintiff.

During the hearing before an Administrative Law Judge (ALJ), Ms. Burks testified that, in the year before her husband died, he provided support in the form of cash for plaintiff. Ms. Burks testified that cash was given to Mr. Stanley. Ms. Burks testified that, although Ms. Olivas became a licensed practical nurse in 1995, Mr. Burks continued to provide half of plaintiff's support. According to Ms. Burks, Mr. Burks was afraid that Mr. Stanley would try to keep plaintiff from them and that was why Mr. Burks provided so much support. Ms. Burks testified that she personally gave Mr. Stanley $3,000 in cash one time, but no longer had the receipt for this transaction. Ms. Burks also testified that she believed her husband gave Ms. Olivas more than $8,000 between December 1997 and March 1999. In addition to cash, Mr. Burks bought

plaintiff a computer for his use at his home with Ms. Olivas. However, when Ms. Burks and plaintiff moved back to Kansas, the computer stayed with Ms. Olivas.

Mr. Burks worked for a clothing store and would purchase plaintiff's clothes for him at his store. Ms. Burks testified she and Mr. Burks took plaintiff for haircuts. Mr. Burks also took plaintiff to the movies a couple of times a month.

Ms. Burks identified check number 6457 in the amount of $98, payable to TCAA, and dated April 6, 1998, as being payment for a baseball team in which plaintiff participated. Check number 6332 dated December 8, 1997, payable to Mr. Stanley in the amount of $2,500 was to help with household expenses. A second check, dated January 20, 1999, payable to Mr. Stanley in the amount of $3,000, was also for household expenses. The record contains copies of each of the checks.

Ms. Burks testified that her husband liked to cook, and when he returned plaintiff to his mother on Sunday evenings, he would bring enough food so that plaintiff's mother would not have to cook until Thursday.

Victor Burks III, plaintiff's uncle, also testified at the hearing before the ALJ. Victor Burks spoke to his father (Mr. Burks) at least twice a week by telephone. During the conversations, his father would discuss buying clothes for plaintiff and preparing and sending food with him when he returned to his mother's house. Victor Burks was also aware that Mr. Stanley tried to get additional money from Mr. Burks. Victor Burks confirmed that plaintiff lived with his grandparents every weekend, every holiday and on all breaks from school, and that it was not unusual for his father to take plaintiff and three or four friends to Myrtle Beach during the summer or to a weekend movie.

-3-

Victor Burks testified that plaintiff had his own room at his grandparents' house and confirmed that his father purchased all of plaintiff's clothing.

Plaintiff's aunt, Melinda Barton, also testified at the hearing before the ALJ. Ms. Barton recalled that her father (Mr. Burks) always took plaintiff for haircuts, purchased his clothes and provided basic necessities.

Plaintiff testified that his grandfather took him for haircuts and bought him clothing about every other week and most of the time on holidays. His grandfather also gave him leftover food to take home with him during the week and would allow him to take a rented video game with him as well. Plaintiff estimated the food he brought with him lasted until Wednesday. Plaintiff testified his mother bought him a few clothes. His grandfather bought his shoes, clothes and school supplies. Plaintiff testified that he lived at his grandfather's house on weekends and in the summer. His grandfather bought him a glove, a hat, and a baseball.

The record also contains a statement by Ms. Olivas, plaintiff's natural mother, submitted at the hearing and a second, identical statement from Ms. Olivas submitted to the Appeals Council. Ms. Olivas states that she is the birth mother of plaintiff and the daughter of Sheryl and Victor Burks. Ms. Olivas reported that, at the time of plaintiff's birth, she and her husband lived with her parents and received free room and board. After divorcing her husband in 1991, Ms. Olivas moved to South Carolina with her parents, living with them until February 1994, at which time she moved in with Mr. Stanley.

Ms. Olivas claims that, during the first five years of plaintiff's life, her parents provided "significant, if not complete, financial and emotional support" for plaintiff. Although plaintiff lived with his mother while attending school, he spent weekends, school breaks and summer vacations with his grandparents. Ms. Olivas said that her parents purchased clothes for plaintiff, paid medical expenses, paid for athletic fees and

activities, and provided food, entertainment and educational needs. Ms. Olivas confirmed that, in April 1998, Mr. Burks purchased a computer for plaintiff. Ms. Olivas also claimed that Mr. Burks provided over $8,000 in cash support for plaintiff from December 1997 through just prior to his death. Some of these funds were paid to Mr. Stanley for deposit in his bank account because she did not have an account. Ms. Olivas claims that the money was then used to pay for plaintiff's school fees and yearbook, and for mortgage payments on their home. Ms. Olivas has two other children with Mr. Stanley.

Based on the record set forth, plaintiff's application for survivor benefits was denied at both the initial and the reconsideration stages. Plaintiff requested and received a hearing before an ALJ on December 12, 2002. On February 5, 2003, the ALJ issued an unfavorable decision. Plaintiff timely appealed the ALJ's decision. On November 12, 2003, the Appeals Council denied plaintiff's request for review. Accordingly, the ALJ's decision stands as the final decision of the Commissioner.

## II.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), a court may render "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The court reviews the decision of the Commissioner to determine whether the correct legal standards were applied and whether the record as a whole contains substantial evidence to support the Commissioner's decision. *Doyal v. Barnhart,* 331 F.3d 758, 760 (10th Cir. 2003). The Supreme Court has held that "substantial evidence" is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389 (1971). In reviewing the record to determine whether substantial evidence supports the Commissioner's decision, the court may neither reweigh the evidence nor substitute its

discretion for that of the Commissioner.  *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

### III.    Discussion

The relevant issue before this court is whether the ALJ's decision to deny plaintiff's application for benefits was consistent with the law and based on substantial evidence.  Plaintiff contends that the ALJ's finding that plaintiff was not dependent upon the deceased wage earner was not supported by substantial evidence and was not made according to applicable law.  Plaintiff contends that he met the dependency requirements of the SSA.

To establish entitlement to child's insurance benefits, a claimant must show that he is the child of an insured person, was dependent on the insured, applied for benefits, was unmarried, and was under age 18 or had a disability that began before he or she became 22 years old.  20 C.F.R. § 404.350.  A grandchild who was adopted after the insured's death by the insured's surviving spouse is considered a dependent as of the date of the insured's death if: (a) the adoption took place in the United States; (b) at the time of the insured's death, the grandchild's natural parent was not living in the insured's household and making regular contributions toward his support; and (c) he meets the dependency requirements set out in § 404.364.  20 C.F.R. § 404.362.  Under § 404.364, a grandchild is a dependent if he (a) began living with the insured before he turned age 18; and (b) was living with the insured and receiving at least one-half of his support

from the insured for the year before the insured became entitled to old-age or disability benefits or died. 20 C.F.R. § 404.364.

After consideration of all the evidence of record, the ALJ found that plaintiff was not dependent upon the deceased wage earner under § 404.362 because, in the year before Mr. Burks died, plaintiff did not receive one-half of his support from Mr. Burks as is required by § 404.364. Accordingly, the ALJ found that plaintiff was not entitled to child's insurance benefits, survivor, on the account of Mr. Burks, through the date of the decision. Having reviewed the entire record, the court finds that the ALJ made his decision according to the applicable law and that there is substantial evidence to support the ALJ's decision.

The ALJ specifically found that Mr. Burks gave some money for plaintiff's support, but did not make regular contributions that were large enough to meet an important part of plaintiff's ordinary living costs during the year prior to Mr. Burks' death. It is undisputed that plaintiff lived with his mother while he was attending school and lived with his grandparents on weekends and breaks from school.

The ALJ considered the testimony that Mr. Burks made multiple contributions towards plaintiff's support in the year before his death. However, the ALJ noted that of the $3,098 that could be accounted during that year, the $3,000 check was written out to Mr. Stanley, and there was no way to know whether the money was used for plaintiff's support. The ALJ also considered the testimony that Mr. Burks gave Mr. Stanley money so that Mr. Stanley would permit him to continue to see plaintiff. The ALJ concluded that "there is no other objective evidence that would support the testimony of the witnesses that the deceased wage earner contributed at least one half of the support for the claimant in the year prior to his death." (Tr. 16).

The record reflects that Ms. Burks' and Victor Burks III's testimony suggested that the $3,000 check was given to Mr. Stanley not for the exclusive support of plaintiff, but to help out the household and to ensure continuing access to plaintiff.  Victor Burks also testified that his father told him Mr. Stanley had asked for money to finance his various business plans.  (Tr. 122-23).  Moreover, as the Commissioner points out, evidence in the record concerning financial support to Ms. Olivas' household in previous years strengthens the presumption that the money given in the relevant time period was not for the exclusive support of plaintiff.  (Tr. 111-12).  Ms. Burks testified that Mr. Burks wrote checks to cover bad checks Ms. Olivas had written.  (Tr. 114-15).  They also gave money to Mr. Stanley and Ms. Olivas to make payments on their vehicle loan.  (Tr. 111-12).

The Commissioner further points out that there is no evidence as to the exact value of the in-kind support Mr. Burks provided plaintiff, (Tr. 14-16), and that it is unlikely to have equaled or exceeded the value of the support provided by Ms. Olivas and Mr. Stanley, who were both employed full-time during the relevant period.  Notably, plaintiff's school attendance was based upon his residence with Ms. Olivas and Mr. Stanley.  Plaintiff was also eligible for a subsidized school lunch program based on consideration of the income of Ms. Olivas' household.  (Tr. 30).

Accordingly, because there is substantial evidence in the record that supports the ALJ's finding that plaintiff did not meet the dependency requirements of § 404.364, the court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the Commissioner's decision denying plaintiff's application for child's insurance benefits as a survivor under Title II of the Social Security Act is affirmed.

-9-

**IT IS FURTHER ORDERED** that plaintiff's Brief in Support of Petition to Reverse Decision of Defendant (Doc. 5) is denied.

Dated this 25th day of March 2005, at Kansas City, Kansas.

                **s/ Carlos Murguia**
                **CARLOS MURGUIA**
                **United States District Judge**